# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5063 | **DATE** | 8/5/2002 |
| **CASE TITLE** | Alexis D. Perez, et al vs. John Ashcroft et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, (1) both Rule 56 motions are denied, (2) INS's denial of Perez' visa application is vacated and (3) this action is remanded for a limited further proceeding. (10-1, 20-1, 26-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 0 7 2002 date docketed | 32 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/5/2002 date mailed notice | |
| SN | courtroom deputy's initials | 02 AUG -7 AM 7:41 Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALEXIS D. PEREZ, et al., )
　)
　　　　　Plaintiffs, )
　)
v. ) No. 01 C 5063
　)
JOHN ASHCROFT, et al., )
　)
　　　　　Defendants. )

DOCKETED
AUG 0 7 2002

MEMORANDUM OPINION AND ORDER

Alexis Perez ("Perez") and Iglesia Bautista El Buen Pastor ("El Buen Pastor"), invoking judicial review pursuant to 28 U.S.C. §2201(a) and 5 U.S.C. §703 (the Administrative Procedure Act, or "APA"), seek a declaratory judgment that the final decision of the United States Immigration and Naturalization Service ("INS") denying Perez' immigration visa petition was improper. Both sides have moved for summary judgment under Fed. R. Civ. P. ("Rule") 56 and have complied with this District Court's LR 56.1.[1]

Even though each of the litigants has proceeded on the premise that there are no genuine issues of material (that is,

---

[1] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to INS's LR 56.1(a)(3) statement as "I. St. ¶ --" and to Perez' 56.1(b)(3)(B) statement of additional facts as "P. St. ¶ --." "I. Resp." designates INS's brief response to part of P. St. Perez has not disputed any of the statements in I. St. This opinion employs the same "I." and "P." abbreviations when referring to the parties' memoranda.

outcome-determinative) fact in dispute that would bar victory as a matter of law, the sum total of their submissions dictates otherwise (albeit on a ground that surfaced only in the final stage of the parties' briefing). For the reasons stated in this memorandum opinion and order, (1) both Rule 56 motions are denied, (2) INS's denial of Perez' visa application is vacated and (3) this action is remanded for a limited further proceeding.

## Facts

Perez, a native and citizen of Venezuela, has been a member of El Buen Pastor since November 1996 (I. St. ¶2). Since December 1996 he has worked as that congregation's music director, a full-time paid position (I. St. ¶13, P. St. ¶18).[2]

In that capacity Perez runs the church's music programs by organizing and directing several choirs, directing youth music activities and purchasing and maintaining instruments (P. St. ¶19). In light of the INS's position described hereafter, it is particularly appropriate to particularize the extensive nature of Perez' religiously-oriented activities apart from simply playing the piano and organ during church services:

---

[2] I. Resp. ¶18 says INS "do[es] not concede that [Perez] has not done any other work besides working for the church." In addition to being non-responsive to the opposition's statement (P. St. ¶18 says "Since December of 1996, Perez has served without interruption as the paid, full-time music director at El Buen Pastor"), INS has failed to support its assertion with any citation to the record. Perez' statement is therefore deemed admitted under LR 56.1(b)(3)(B) (see <u>Bordelon v. Chicago Sch. Reform Bd. of Trs.</u>, 233 F.3d 524, 527 (7th Cir. 2000)).

1. He selects the worship and praise songs for each Sunday morning service, setting the order of the songs and planning the order of the service with the Pastor (P. St. ¶20).

2. He types and prints the music program for congregation members, preparing comments and reflections on the songs and linking them to relevant Bible verses (id.).

3. He reviews new Christian music for inclusion in the congregation's repertoire.

4. He prays with and teaches the Bible to the church's youth group on Saturday nights and provides spiritual leadership and guidance to all members of the congregation (P. St. ¶21).

Moreover, even before his employment with El Buen Pastor Perez worked for seven years as the music director of a church in Maricaibo, Venezuela and for about ten months in the music department of a church in Wheaton, Illinois (P. St. ¶22).

El Buen Pastor is a member of the Southern Baptist denomination (P. St. ¶1). Baptists believe that music can be a form of ministry and that they can express their relationship with God through music (P. St. ¶8).³ To that end, for over 60

---

³ I. Resp. does not specifically admit or deny P. St. ¶¶8, 11, 12, 15 and 23, describing them as "statement[s] of opinion not...of material fact." That is really an improper characterization of those paragraphs, which are drawn from documents written by various officials of the Baptist church

3

years all Baptist colleges and seminaries have offered degrees in music ministry (P. St. ¶9). Individuals who are hired to lead music for Baptist congregations must demonstrate a religious commitment and are considered to be ministers (I. St. ¶11, P. St. ¶11).

On August 25, 1999 El Buen Pastor filed on Perez' behalf a form I-360 petition for an immigrant visa and a Form I-485 application for adjustment of status with the INS (I. St. ¶3). That visa petition claimed Perez was a "special immigrant religious worker" under the Immigration and Nationality Act ("Act") §203(b)(4), 8 U.S.C. §1153(b)(4),[4] due to his position as musical director at El Buen Pastor (I. St. ¶4).

Under that section, one of a limited number of visas is available to an immigrant (1) who "for at least 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States," (2) who "seeks to enter the United States...to work for the organization

---

expressing beliefs held by members of the denomination. It is particularly disingenuous for INS to assert that those documents consist of "opinion" where I. St. ¶¶8-12 cites to the very same documents. INS has not cited to any record evidence that conflicts with any of those documents, and those P. St. paragraphs are also deemed admitted.

[4] All further references to the Act will take the form "Act §--," referring to the Title 8 section numbering rather than to the Act's internal numbers.

4

in a professional capacity in a religious vocation or occupation" and (3) who "has been carrying on such vocation, professional work or other work continuously for at least the 2-year period" preceding the time of application (Act §1101(a)(27)(C)). "Religious occupation" as used in that section has been defined by the INS as (8 C.F.R. §204.5(m)(2)[5]):

> an activity which relates to a traditional religious function. Examples of individuals in religious occupations include, but are not limited to, liturgical workers, religious instructors, religious counselors, cantors, catechists, workers in religious hospitals or religious health case facilities, missionaries, religious translators, or religious broadcasters. This group does not include janitors, maintenance workers, clerks, fund raisers, or persons solely involved in the solicitation of donations.

On December 8, 1999 INS requested additional evidence from El Buen Pastor as to Baptist philosophy and church organization, as well as verification of Perez' specific duties as music director (I. St. ¶5). That evidence was provided on February 24, 2000 (I. St. ¶5-13). On April 5, 2000 INS denied the visa petition on the grounds that the position of "music director" did not clearly qualify as a religious occupation (I. St. ¶15). El Buen Pastor appealed that decision on May 5, 2000, and on September 19, 2000 the INS Administrative Appeals Office upheld the earlier denial (I. St. ¶¶16-17). That determination was

---

[5] Further citations to provisions of 8 C.F.R. (referred to here as the "Regulations") will take the form "Reg. § --," thus avoiding repeated references to the C.F.R. volume.

5

based on its findings that (1) El Buen Pastor had failed to establish that the position of music director was a religious occupation and (2) that the church had failed to establish that Perez had two years of continuous religious work experience (I St. ¶18).

On June 29, 2001 Perez filed this action, contending that the INS's determination (1) is clearly contrary to the agency's own regulation, (2) was based on a rule not promulgated in accordance with proper procedures and (3) violates the Establishment Clause of the First Amendment. After INS brought the case to issue, the cross-motions for summary judgment followed.

## Standard of Review

Final agency decisions are subject to judicial review under APA. What deference is due to those decisions depends on the type of action undertaken by the agency.

When an agency issues a formal interpretation of its governing statute, speaking to a matter on which the statue is silent or ambiguous, courts defer to that interpretation as long as it is not arbitrary, capricious or manifestly contrary to the statute (Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 843-44 (1984)). Formal interpretation occurs when an agency exercises the legislative authority that the statute implicitly delegates to it, generally (though not always) through notice-

and-comment rulemaking or formal adjudication (<u>United States v. Mead Corp.</u>, 533 U.S. 218, 229-31 (2001)). All substantive rules adopted by an agency--that is, rules that "create law, usually implementary to an existing law"--must be implemented through formal rulemaking procedures (<u>Bd. of Trs. of Knox County Hosp. v. Shalala</u>, 135 F.3d 493, 500 (7th Cir. 1998)).

<u>Mead</u>, 533 U.S. at 234-35 teaches that lesser degrees of deference are due to informal agency actions--those that do not conform to the notice-and-comment or other comparably formal procedures. As <u>U.S. Freightways Corp. v. Comm'r</u>, 270 F.3d 1137, 1141 (7th Cir. 2001)(internal citations omitted) recently explained:

> After <u>Mead</u>, we know that we give full deference under <u>Chevron</u> only to regulations that were promulgated with full notice-and-comment or comparable formalities. We also know that deference to agency positions is not an all-or-nothing proposition; more informal agency statements and positions receive more flexible respect, in which factors like "the degree of the agency's care, its consistency, formality, and relative expertness, and ...the persuasiveness of the agency's position," are all relevant.

That more flexible approach is intended to ensure that agencies do not "pass broad or vague regulations through notice-and-comment procedures, and then proceed to create rules through <u>ad hoc</u> interpretations that were subject only to limited judicial review" (<u>id</u>. at 1142).

Informal agency interpretation of any of its own regulations is entitled to judicial deference, but only when that

7

interpretation relates to ambiguous language in the regulation (Christensen v. Harris County, 529 U.S. 576, 588 (2000)). In such cases the agency's interpretation is controlling unless it is "plainly erroneous or inconsistent with the regulation" (Auer v. Robbins, 519 U.S. 452, 461 (1997), citing earlier cases). But such deference is not warranted when a regulation is not ambiguous, although the position the agency has adopted informally is entitled to respect to the extent that it has power to persuade (Christensen, 529 U.S. at 587-88). Courts must determine whether a particular agency rule qualifies as substantive or interpretive, regardless of the label the agency itself places on it (Hoctor v. United States Dep't of Agric., 82 F.3d 165, 167 (7th Cir. 1996)).

### Agency Decision under the Regulation

Perez first contends that INS's denial of his visa application is clearly contrary to the INS Regulations implementing the Act and must therefore be reversed. Perez argues that he meets all of the requirements specified by the Act and the Regulations and, further, that the Regulations contain no mention of a formal religious training requirement. INS counters that its imposition of the formal training requirement--and its denial of Perez's visa request because he lacks that training--simply represents a reasonable interpretation of the Regulations and that Perez' visa application was properly denied because he

8

has no such training.

"Religious occupation" is defined in the Regulations as "an activity which relates to a traditional religious function" (Reg. §204.5(m)). Nothing in the Regulations refers to the background or training of people who seek to qualify as religious workers. I. Mem. 5 argues that it "makes sense" to impose the formal religious training requirement because religious worker visas are issued only to individuals whose services are directly related to the creed of the denomination, not those who work in primarily administrative, humanitarian or secular positions. INS also contends that it "has been requiring for years that special immigrant religious workers have undergone formal religious training" (I. R. Mem. 5).

On a related note, the INS statement in its initial denial of Perez' application that his position was not a "religious occupation" because it included certain administrative duties--including sound system setting, piano performance and service rehearsals--is clearly contrary to the Regulations, which impose no requirement that for someone to qualify as a religious worker, he or she must _never_ engage in any secular or administrative duties. It is difficult to imagine _any_ position with any religious organization that would not involve a small amount of administrative duties. Moreover, where being a music director _can_ qualify under the rubric of "religious worker," it would be

9

patently arbitrary to treat such directly related work as disqualifying the applicant.

Here, given the detailed--and uncontroverted--description of the integral role that so many of Perez' musically oriented activities play in worship services at El Buen Pastor, it is really beyond dispute that his position as music director qualifies as a religious occupation. And it is equally apparent in light of his extensive religiously-grounded work that INS's insistence--its contention that the absence of "a detailed and specific course of training" (the language of its Nebraska Service Center in ruling on Perez' application) somehow disqualifies him--is an extraordinarily arbitrary and mechanistic position.

But to turn to the origins and substantive sustainability of that notion, both parties spend a great deal of energy discussing two INS rulings (P. Exs. B & C) dating from 1993 and 1994, each of which involved an INS reversal of a previous visa denial that had been premised on a finding that the applicant's position was not a "religious occupation." Both rulings are silent as to whether the applicant had or had not received any formal religious training. Predictably each side puts its own spin on that fact: INS urges that from the rulings' silence on the matter "it is probably safe to assume" that those applicants had

10

received such formal training,[6] while Perez urges the opposite assumption.

Neither assumption is necessary at this point. What is important is that <u>neither</u> ruling mentions a formal training requirement at all. That is in sharp contrast to later INS rulings issued in 1999 and 2000--around the time of Perez's visa denial--all of which <u>do</u> mention a formal training requirement, expressed with the identical phrase: "Persons in [religious occupations] must complete prescribed courses of training established by the governing body of the denomination" (P. Ex. D). By sharp contrast with the earlier rulings, that phrase appears in all of the later rulings, even those that do not turn on the question of formal religious training. Such a change in language strongly suggests that at some point during the 1990s the INS implemented a new rule requiring that applicants must have received such formal training to qualify for religious worker visas.[7] This opinion now turns to the question whether

---

[6] I. R. Mem. 4 premises the assumption that one of those applicants must have received formal religious training on the fact that he had been employed as a missionary/counselor at the petitioning organization for six years. Under that logic the INS should have assumed that Perez had also acquired such formal training, for he had been employed as music director at El Buen Pastor for several years, in addition to having spent more than eight years of employment in similar positions with other congregations.

[7] Additional support for that conclusion can be found in a 1996 case involving the issuance of a non-immigrant religious worker visa under Reg. §214.2(r)--a regulation that includes the

11

the INS properly promulgated that rule.

## Promulgation of the Rule

There is no dispute that INS did not engage in any sort of formal rulemaking process before adopting the requirement of formal religious training. Perez argues that the INS adopted that requirement in violation of the APA, because it is a substantive rule adopted without the use of notice-and-comment or other formal rulemaking procedures. INS argues to the contrary that the formal training requirement is simply an interpretation of the Regulations--more specifically, of the definition of "religious occupation"--and that therefore no formal rulemaking was necessary. Perez wins that argument.

As Perez points out, the Regulations define "religious occupation" solely on the basis of the nature of the work a person performs:

> Religious occupation means an activity which relates to a traditional religious function.

To be sure, that regulation is not entirely unambiguous in all respects. Some informal interpretation--for example, a determination of what qualifies as a "traditional" function of a

---

same definition of "religious occupation" as the Regulations here--in which INS explicitly admitted that "an individual may be seen to be functioning within a religious occupation (for purposes of an R-1 visa application) even though the individual has had no prior experience or training in that occupation" (Tenacre Found. v. INS, 78 F.3d 693, 697 (D.C. Cir. 1996) (emphasis omitted)).

12

religion--is obviously required for the INS to determine who does or does not qualify for a religious worker visa. But nothing in that definition, which focuses solely on the <u>activity</u> performed by the applicant and its relationship to a religious <u>function</u>, even remotely suggests that the background or qualifications possessed by an applicant might play any part in determining whether that person qualifies for a visa. Yet INS now argues that it arrived at the formal training requirement by "interpreting" that definition.

Nowhere in its memoranda has INS offered any real explanation of how the formal training requirement can be derived from the Regulations. I. R. Mem. 7 asserts that it is not irrational for INS to require that religious worker visa applicants have formal training in their field and reminds this Court that the Act delegates to INS the authority for determining visa eligibility procedures. But that is not what is at issue here. Perez has not disputed that INS authority extends to the establishment of visa eligibility procedures, nor has he contended--at least not for the sake of his challenge to INS procedures--that the formal training requirement is inherently irrational. Instead he contends that the formal training requirement amounts to a substantive rule that was impermissibly created informally--in violation of APA's requirements.

This Court agrees: Nothing in the Regulations' definition

13

of "religious occupation" suggests a reasonable "interpretation" that includes a formal training requirement. This opinion can assume without deciding that the implementation of a formal training requirement is within the scope of INS authority under the Act--but that in no way exempts INS from following the mandatory formal rulemaking procedures before implementing such a substantive rule. That it failed to do, and its failure is fatal to the principal gravamen of its denial of Perez' application.

This Court therefore finds INS's denial of Perez' visa application on the ground that he lacks formal training as a music director to be invalid.[8] INS's decision based on that ground is vacated.

## Conclusion

Neither side is entitled to judgment as a matter of law. As this opinion has held, INS's motion fails because its visa denial was premised on Perez' failure to meet a rule that it implemented in violation of the APA. But Perez's motion also fails because the present record does not establish--in a single respect reserved by INS in its denial ruling--that he meets all other

---

[8] Because this Court finds that the formal training requirement was imposed in violation of the APA, Count III of Perez's Complaint--that any formal training requirement violates the First Amendment because it would constitute a government-imposed a test for determining a "traditional religious function" that could be inconsistent with or contrary to the religious teaching and practices of a religious organization--is rendered moot. This opinion therefore does not reach the arguments advanced by the parties on that issue.

14

criteria for receipt of a religious worker visa.

Some explanation on that last point is needed. At the end of the INS ruling, it stated without elaboration that El Buen Pastor had failed to establish its ability to pay Perez the proffered wage, as required by Reg. §204.5(g)(2). That issue had not been raised in the ultimate visa denial nor in any INS requests for additional information. But INS has again raised it in a footnote to its most recent submission (I. R. Mem. 1 n.1), and Perez has responded with a brief submission of his own. Because that suffices to create a genuine issue of material fact,[9] Perez also cannot obtain a final favorable judgment here and now.

This action is therefore remanded solely to enable El Buen Pastor to make a showing to INS that it is able to pay Perez the proffered wage. As and when such a showing is made (as would appear to pose no problem, given the effort and expense that have been devoted to the current controversy), INS is ordered to grant Perez a religious worker visa. If however it were to turn out that El Buen Pastor cannot pay Perez as it and he have

---

[9] INS also found that Perez had failed to demonstrate that he had been employed as a religious worker for two years prior to the application, but that finding was based on the rationale that his position as El Buen Pastor's music director did not qualify was a religious occupation because he did not have formal training (P. Ex. A at 0004). INS does not dispute that Perez had worked as music director for more than two years at the time he made his application (see n. 2).

15

represented, INS would be entitled to reject the visa petition on that ground.

                                                      /s/ Milton I. Shadur
                                                Milton I. Shadur
                                                Senior United States District Judge

Date: August 5, 2002